PC SCAN



RECEIVED
MAM
2/3/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

[If you need additional space for ANY section, please attach an additional sheet and reference that section]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

RICHARD KUPFERSCHMIDT

ID# M25549

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Latoya Hughes, IDOC Director
R. Woods, Warden
Sgt. Roth
Sgt. Novak
Sgt. Gibson
Sgt. Rodriguez
Sgt. Poparthics
Sgt. Melvin
Ms. McManhan, MHP
Ms. O'Ahos, MHP
Jane Doe
John Doe

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: _____

1:26-cv-01501
Judge Sharon Johnson Coleman
Magistrate Judge Gabriel A. Fuentes
PC2
RANDOM / Cat. 3

(To be supplied by the Clerk of this Court)

## CHECK ONE ONLY:

✓  **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
   **U.S. Code** (state, county, or municipal defendants)

____  **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
      **28 SECTION 1331 U.S. Code** (federal defendants)

____  **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR*
*FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section ]

I.    **Plaintiff(s):**

A.    Name: Richard Kupferschmidt

B.    List all aliases: _____

C.    Prisoner identification number: M25549

D.    Place of present confinement: Henry Hill Correctional Center

E.    Address: 600 S. Linwood Rd., Galesburg, IL 61401

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.   **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.    Defendant: Latoya Hughes

      Title: Illinois Department of Corrections Director

      Place of Employment: 1301 Concordia Pl, IL 62794

B.    Defendant: R. Woods

      Title: Warden of Sheridan Correctional Center

      Place of Employment: _____

C.    Defendant: Sgt. Roth

      Title: Seargent at Sheridan Correctional Center

      Place of Employment: _____

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section ]

# ADDITIONAL DEFENDANTS

D. Defendant: Sgt. Novak

   Title: Seargent at Sheridan Correction Center

   Place of Employment: SHERIDAN CORRECTION CENTER


E. Defendant: Sgt. Gibson

   Title: Seargent at Sheridan Correctional Center

   Place of Employment: SHERIDAN CORRECTION CENTER


F. Defendant: Sgt. Rodriguez

   Title: Seargent at Sheridan Correctional Center

   Place of Employment: SHERIDAN CORRECTION CENTER


G. Defendant: Sgt. Papattios

   Title: Seargent at Sheridan Correctional Center

   Place of Employment: SHERIDAN CORRECTION CENTER


H. Defendant: Sgt. Melvin

   Title: Seargent at Sheridan Correctional Center

   Place of Employment: SHERIDAN CORRECTION CENTER.


I. Defendant: Ms. McManhan

   Title: Mental Health Professional

   Place of Employment: SHERIDAN CORRECTION CENTER.

ADDITIONAL DEFENDANTS                    (continued)

J. Defendant: Mo. O'Ahos

Title: Mental Health Professional

Place of Employment: Sheridan Correction Center


K. Defendant: Jane Doe

Title: Unknown Correctional Staff

Place of Employment: Sheridan Correction Center

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: "I", Do not have The info on it At This time.

B. Approximate date of filing lawsuit: 2010 - 2011

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: N·A Richard · c Kupferschmidt

D. List all defendants: N·A

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Northern District.

F. Name of judge to whom case was assigned: N·A

G. Basic claim made. N·A

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Settled

I. Approximate date of disposition: 2013.

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

3

Revised 9 2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section]

## IV. Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

While in segregation at Sheridan Correctional Center under Investigative Status/Temporary Confinement on September 6, 2024, I began to have an increase of mental distress. I was already labeled as SMI (Severely Mentally Ill). As my thoughts continued to spiral, I asked Defendant Rodriguez for a Crisis Team. However, he denied me access to one under the pretext that he does not do Crisis Team or PREA Calls/Reports during his shift due to the amount of paperwork and necessity of contacting a major. Instead, Rodriguez stated any mental health issues, regardless how slight, would be treated as a Suicide Watch protocol, where you are stripped of all property (including clothes) and placed in an empty room. Any lay person would agree that any SMI person experiencing mild symptoms would only have those symptoms exacerbated under these conditions.

The following day, September 7, 2024, MHP Sara V. performed an initial mental health evaluation at my door, 5 days after the start of my temporary confinement. Over my objection of being interviewed in front of other individuals in custody at my door, I explained that my mental health was being severely negatively affected by Defendant R. Wood's and other defendant's denial or reading material (including religious), puzzles, photos, legal work, mail, or recreation time in segregation contrary to IDOC standards (20 Illinois Administrative Code 504.620). After explaining to MHP Sara V. Defendant

4                                                                    Revised 9 2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rodriguez's explanation of how to handle Crisis calls on Segregation/Temporary Confinement, she confirmed that was not policy. However, if a staff member states an individual in custody is having thoughts of "hurting himself or others," they will be believed and the individual placed on watch per Mental Health's direction. When I explained staff are doing that and making individuals fear getting help so they don't end up on watch, she stated she didn't believe they would lie and deny anyone a Crisis Team.

On September 8, 2024, I felt I desperately needed a mental health professional to speak to. At about 9:30 I asked Defendant Novak during meal pass if he could do a Crisis Team; however, he told me there was no mental health staff available that day and I would have to speak with Correctional Officer (c/o) Smith. It took him 3 hours before he walked by my cell again and I could inquire as to what happened to the Crisis Call. Novak stated C/o Smith was occupied with property and other duties; if I wanted mental health services, the only option available was Suicide Watch and left my door. The following day (9/9/24), I asked Defendant McManhun to document the event.

Due to the severe added mental health strain of Segregation/Temporary Confinement, I was trying to follow Mental Health's teaching for coping mechanisms. The teaching of both Dyalectic and Cognitive Behavioral Therapy suggest distractions and breathing exercises. Because 20 IL Admin. Code 504.680 says reading material is allowed, I inquired of Sgt./Acting Lt. Tirtdle why a SMI individual was being denied access to something granted by the Administrative Code, which was passed by the legislature of Illinois, and enacted at all IDOC facilities by Defendant Hughes (including court document access). He stated Defendant R. Woods made the unilateral decision due to the use of synthetic drugs. However, even facility library reading material

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Statement of Claim continued (a)

was being denied. In direct violation of the Administrative Code, on September 9, 2024, Segregation staff denied me access to mental health coping material/mechanisms, although I am SMI.

About a week later, on September 22, 2024, my mental health took a turn for the worst. At about 8:20 I began to ask Defendant Gibson for a Crisis Team so I could speak to someone. I asked multiple times, and although he acknowledged my request, he never performed one. My next door neighbor, a fellow individual in custody, spoke to me for 45 minutes because he saw the extreme need of my mental breakdown. On the following shift, I spoke to Sgt. Poputsa, who was legitamidly concerned, checked on me periodically, and instructed me to write a grievance listing him as a witness.

The lack of proper mental health access culminated to a complete breakdown on or about September 23, 2024. On that day, I was blanking in and out, experiencing severe depression, and desperately needed a mental health professional. At about 4pm, during dinner distribution, I began pleading with Defendant Novak for a Crisis Team. Yet, he stated, "I do not have time for that bullshit, I have to run showers.", and proceeded to walk away. Between 6-6:45pm, I received my shower. Because of the urgency, I told Novak I would not exit the shower to return to my cell until I received a Crisis Team. Instead of assisting, he threatened me with further disciplinary action. To avoid an extension to my segregation/Temporary Confinement period, I returned to my assigned cell. When Novak passed by with the RN for medication administration, I asked for a Crisis Team again, but he just walked off. During his last count at 9:30pm, I showed him that my mental instability culminated to self harm in the form of cuts to my right arm. Instead of showing concern, calling a Crisis Team, or even putting me on Suicide Watch, he stated, "That's nice.", and walked away. I remained on my bed with racing suicidal thoughts without available/usual recommended coping mechanisms due to the defendant's violation of 504.620 Segregation standards.

On September 24, 2024 Sgt. Petty was doing psych rounds (as is often done at the facility in place of a mental health professional). Because a seargent is not a mental health professional, and I continued to need experienced help, I fell asleep. Next thing I know, Sgt. Petty was at my door with trays making remarks about my excessive sleeping. After he

Statement of Claim Continued (h)

walked away, I got up and attempted to eat, but began to vomit. Due to the vomitting, I layed back down. Next time I woke up was to Defendant Rodriguez passing trays, which I refused and it was given to individual in custody Ryan O'neal #Y39652 in cell 10. I requested a Crisis Team from him. He stated Defendant McManhan was coming to do an evaluation on someone transferring out and he'd alert her, but it'd be up to her if she wanted to see me. When Rodriguez came walking down the hallway shortly after, I showed him I had self-harmed on my arm and really needed to speak to mental health; yet he simply said, "That's nice. I'm going to lunch." Two individuals who had been talking to me in place of mental health, Quincy Jones and Ryan O'neal, begged Rodriguez to call a Crisis Team for me before "he kills himself." My arm continued to bleed and blood pool on the floor before I finally heard Defendants McManhan and Melvin speaking to someone down the hall. I yelled for McManhan to come, but Melvin came to the door and said she was leaving the unit because it was "late." I yelled at him explaining I had asked Rodriguez for a Crisis Team, but cries for one went unanswered by all defendants. There was nothing I could do but continue to soak in my suicidal thoughts without any reading material or photos of my loved ones to help me cope. I asked inmate O'neal what time it was; that was the last clear memory I have. When I regained consciousness, I was being questioned by 11-7pm Sgt John Doe and C/o Munoz in the back of the ambulance about what had happened. When I was unable to provide them with anything since my conversation with O'neal, I was told that at approximately 11:15pm Sgt. Paprots found my window covered during check and tapped it. As there was no response, he opened the cell tray slot and immediately saw the entire cell covered in blood with me (the plaintiff in this petition) passed out on the toilet, my left arm engrossed in blood, and a string tied around it. He immediately radioed for help/Code 3 and for C/o John Doe to come. Defendant Melvin arrived on the scene, moved my arm to check for consciousness, moved me onto a mattress, and proceeded to wrap my arm. When the ambulance arrived, a medical extraction was performed for transportation to the nearest hospital. The Sergeant and C/o Munoz further stated that EMTs at the scene had to apply a turnoquet; that on the wall I had written in blood, "Crisis Team. Help Me!" At the hospital the ER physician stitched up

Statement of Claim continued (c)

the wound and inquired as to why half the cut seemed old. I explained half of it had occurred on Monday, but Defendant Novak still had refused to call a mental health Crisis Team, and the rest had apparently been from hours earlier from staff narrative.

Upon release from the hospital (by then 9/25/24), I was returned to Sheridan Correctional Center and placed in the Health Care Unit (HCU) on Suicide Watch, where I fell asleep. Defendant McManhan came around 5:30 and asked what happened. I explained all that had transpired. By the end of our session, I was in tears. I saw her again the following day, where she asked me why I had told her I was "ok" during her round to see the transfer on 9/24/24, even though I explained I had never seen her and only spoke to Defendant Melvin. I was placed on mental health/psychiatric medication. On an unknown day later that week, I saw Melvin and asked him if on 9/24/24 I had seen or spoken to McManhan. He confirmed my account of the events, explained because he needed his job he would be writing a truthful account of the events in an incident report, and that I needed to write a grievance about what had transpired listing him as a witness. He stated he wished he would have pushed harder for McManhan to see me, looking back at the events that had transpired.

On or about October 8, 2024 I was escorted from HCU to C-4 seg on 3-11pm shift by C/o Love for shower and out of cell time. C/o Love asked me how long I needed to shower, to which I replied 15 minutes. Defendant Rodriguez then informed me in a demeaning manner that I would only get 40 minutes of out-of-cell time instead of the mandated hour, because my shower time would now be counted as part of it. For out of cell time, in violation of segregation standards, I was chained and cuffed so I could not move/ walk around. When I asked Rodriguez since when was this policy, he said since he made it so. Because of this, I asked C/o Love to just return me watch cell.

On October 9, 2024 Sgt Becker explained when I was to be taken for a shower and out of cell time that, per Defendant R. Woods, I (not others similarly situated) would be chained and cuffed to a table to prevent movement. This was clearly a retaliatory action for having a mental breakdown as a result of unanswered calls for help via Crisis Team. Further retaliatory action was seen by the refusal to have a watch officer present with me, although required, to use

Statement of Claim continued (d)

him/her to relieve other officers and at times move me without proper documentation.

On October 13, 2024 at approximately midnight Defendant Melvin came to my watch cell to interview me for the incident report he had to file. Again he stated he would be stating McManhan did not come to speak to me on 9/24/24 as she states and the account of that day matches what is documented on my attached grievance and not her MHP report.

On or about November 12, 2024 during 8am med pass I asked Defendant Roth to shut the blowers off in the cells, as they were not properly working, were loud, and severely affecting my mental health by preventing me from sleeping. When he said "No", I requested to speak to a lieutenant. I was met with a derogatory "Fuck off" from Roth. When I was denied, I asked for a Crisis Team, Roth responded, "Go kill yourself. I bet you won't." I asked him to repeat himself, which he did. I proceeded to go to my cell. On the way I saw C/o Jane Doe and asked her for a Crisis Team. Unfortunately, she stated that because Roth outranked her, her hands were tied. Once I locked up, Ms. Allen came to my door to inquire about what had occurred. I explained the situation and approximately 10 minutes later she returned with Ms. Oachs, who performed a Crisis and documented everything. She proceeded to contact Defendant McManhan (MHP). Once at dayroom, I contacted my family, who in turn called the facility to speak to Internal Affairs (C/o Stale, Ms. Taylor, Sgt. Becker) and report the incident to ensure it was documented.

Overall, I remained on Suicide Watch for 29 days before being transferred to Juliet Treatment Center. As a form of retaliation, Lt. Godinez and C/os John and Jane Doe searched my cell on 5/25/24 and left with a notebook filled with grievance numbers and submittion dates. These actions are a regular occurance at Sheridan Correctional Center by the Defendants. I had been complaining of these issues for over 6 months, and Defendants ensured I received grievances late at JTC (as seen by a letter from CCII N. Rossi) to try to make all grievances late and unable to comply with PLRA for 1983 Litigation. The missing notebook was given to the property officer. The search was witnessed by Ryan O'neal #Y39652. To date, no contraband/search slip has ever been provided or the item returned.

Statement of Claim continued (e)

Because Defendant R. Woods has not placed cameras in segregation, Crisis calls go unanswered, officers skip 30 minute checks, and mental health can falsify walk-thru/checks. The behavior of denying severely mentally ill individuals in custody a Crisis Team to speak to a mental health professional in a time of need is a common occurrence. Random changes in policy that violate 20 Illinois Administrative Code occur and never get reported, regardless of the mental anguish and destabilization it causes. In the instant case, it goes further to show how these actions by the defendants caused this SMI individual to a suicidal attempt, and rather than provide help, retaliated in response.

# CAUSES OF ACTION
## COUNT 1

Plaintiff was subjected to Deliberate Indifference On Behalf of the Defendants

Plaintiff incorporates the Statement of Claim as it was stated fully here in.

1. Defendant Latoya Hughes was deliberately indifferent in that through ARB statements, grievances, and audits that displayed conditions affecting the plaintiff and the events that occurred failed to act to address the situation.

2. Defendant R. Wards was deliberately indifferent in that through grievances he was made aware of the denial of crisis calls and through incident reports was made aware of the post-9/24/25 events, and yet failed to act accordingly, but instead instituted retaliatory actions in violation of 20 IL Admin Code 504.

3. Defendants Rush, Noram, Gibson, Rodriguez, Papathos, Melvin, VanDee, Seefee were deliberately indifferent in failing to perform a Crisis Team Call to contact Mental Health department for the plaintiff, who is severely mentally ill, that ultimately led to a suicide attempt.

4. Defendants McManhan and O'Ahos were deliberately indifferent in performing routinely mental health checks in segregation, ignoring the plaintiffs calls for help, and falsifying mental health documentation.

## COUNT 2

Plaintiff was subjected to Negligence on Behalf of the Defendants

Plaintiff incorporates the Statement of Claims as it was stated fully herein.

5. Defendant Latoya Hughes acted with negligence in failing to correct the actions towards the plaintiff once made aware via the grievance process.

6. Defendant R. Woods was negligent in correcting the violations in place that led to the plaintiff's incident on 9/24/24 and therein after, even though he was made aware via the institution's grievance procedure and incident report from the staff.

7. Defendants Roth, Novak, Gibson, Rodriguez, Papattios, Melvin, John Doe, and Jane Doe were negligent towards the plaintiff in ignoring his petition for a Crisis Call due to severe mental health concerns that culminated into the events of 9/24/24.

8. Defendants Mellonhan and O'Ahos acted with negligence towards the plaintiff in ignoring his pleas for help, even when physically hearing him within the segregation hallway.

# COUNT 3
## Plaintiff was denied Due Process under the 14th Amendment to the Constitution

Plaintiff incorporates the Statement of Claims as it was stated fully herein.

9. Defendant Latoya Hughes violated the plaintiff's 14th Amendment right to Due Process by allowing the other defendants, as her subordinates, to violate segregation standards towards the plaintiff, who is SMI, and failing to perform audits for 20 IL Admin Code 504 compliance.

10. Defendants R. Woods, Roth, Novak, Gibson, Rodriguez, Papattios, Melvin, John Doe, Jane Doe violated the plaintiff's 14th Amendment right to Due Process by not following 20 IL Admin Code 504 segregation standards regarding permitted items (reading/religious material), in the cell that serves as a copying mechanism for SMI individuals and ultimately directly contributed to the events of 9/24/24

## COUNT 4

Plaintiff was subjected to Cruel and Unusual Punishment in Violation of the 8th Amendment to the Constitution

Plaintiff incorporates the Statement of Claims as it was stated fully herein.

11. Defendants R. Woods, Roth, Novak, Gibson, Rodriguez, Papatties, John Doe, and Jane Doe violated Plaintiff's 8th Amendment right to be free from cruel and unusual punishment by not allowing him supervised out of cell time without restraints/recreation to allow mobility of joints and excercise, which are detrimental to both physical and mental health, in opposition to Standards set forth in 20 IL Admin Code 504. (retaliatory action).

12. Defendants R. Woods, Roth, Novak, Gibson, Rodriguez, Papatties, John Doe and Jane Doe violated the Plaintiff's 8th Amendment right to be free from cruel and unusual punishment by not following segregation standards set forth in 20 IL Admin Code 504 regarding allowed cell items (legal mail, religious books, reading material, photos of loved ones) that are detrimental to mental health and affected the plaintiff's mental state that led to the events of 9/24/24.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

### V.    Relief:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

WHEREFORE, Plaintiff respectfully prays this Court:

A. Declare that the acts and omissions described herein violated Plaintiff's rights under 20 IL Admin Code 504 and the Constitution and laws of the United States;

B. Order Defendants to pay compensatory, nominal, and punitive damages;

C. Order Defendants to pay reasonable attorney fees and costs; and

D. Grant other just and equitable relief that this Honorable Court deems necessary.

### VI.   The plaintiff demands that the case be tried by a jury.    ☑ YES    ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _10TH_ day of _FeB_, 20 26

_____

(Signature of plaintiff or plaintiffs)

Richard Kuperferschmidt
(Print name)

M25549
(I.D. Number)

600 Linwood RD
GAlesBurg, IL 61401.
(Address)

Revised 9 2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

STATE OF ILLINOIS }
                  } ss
COUNTY OF KNOX    }

AFFIDAVIT

I, Marcos Barajas #Y42424, hereby declare under penalty of perjury that the following is true and correct based upon my personal knowledge, and that I am competent to testify thereto if called upon as a witness.

Due to difficulties in understanding and comprehending legal material, I assisted Richard Kupferschmidt with writing and filing his 1983 civil rights petition. It is my true and accurate assessment that he is not mentally capable to litigate pro se. I compiled and assisted in seeking pro bono lawyers on his behalf and hope if he is refused, the court would help him in finding a...

/s/ [signature]

Marcos Barajas          Affiant


Pursuant to 28 U.S.C. 1746, 18 USC 1621, and 735 ILCS 5/1-109, I declare, under penalty of perjury, that I am the named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

/s/ [signature]

Date: 1/30/26

Marcos Barajas

Y42424

600 S. Linwood Rd

Galesburg, IL 61401